UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JANA CHURCHWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | 1:17-CV-00299 |
| CITY OF CONCORD, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW, Plaintiff Jana Churchwell, by and through undersigned counsel, and submits this Memorandum in support of her Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**FACTS**

Jana Churchwell ("Plaintiff" or "Churchwell") worked as a Project Engineer for the City of Concord ("Defendant" or "City") from her hire in 2001 until her termination on or about July 6, 2015 (Churchwell pg. 15-16, Hyde pg. 19)[1]. Sue Hyde was hired by the City of Concord in 2005 and served as Engineering Director from that time through all times relevant to the lawsuit (Hyde pg. 14-15). Hyde directly supervised the Deputy City Engineer, Rick Blat, and Blat was Churchwell's direct supervisor until her termination (Hyde pg. 16, 41-42).

In 2007, Churchwell began suffering from, and was diagnosed with, Chronic Autoimmune Urticaria (hereinafter "CAU"), Irritable Bowel Syndrome (hereinafter "IBS"), and

---

[1] Citations are as follows: (Deposition Name, Pg. No.), (Deposition Exhibit No.).

1

chronic migraines (Churchwell pg. 34-35, 42-43). Churchwell advised Hyde that she was having health problems as early as 2007 or 2008 (Hyde pg. 31). Hyde recalls Churchwell advising her that she was seeking treatment for an autoimmune condition and that she was having troubles with migraines and irritable bowel syndrome (Hyde pg. 31-32). By year 2013, Churchwell's impairments were causing her to miss time away from work. Churchwell sought and was granted FMLA leave for many of these absences which were specifically related to her CAU, IBS, and chronic migraines (Churchwell pg. 48). Churchwell's time away from work resulted in her requesting accommodations such as making up the time missed and work tasks by coming in early, leaving later, or working evening and weekend hours (Churchwell pg. 48). Churchwell was notified that her FMLA would run out as of June 12, 2015 (Churchwell pg. 65-66, 70).

Under the City's personnel policy, an employee could request from their Department Head a 30-day unpaid leave (Hyde pg. 40-41, Exhibit 1). Pursuant to the policy, the department manager has the discretion in whether to allow the 30-day leave or not (Edwards pg. 28-29). If the initial 30-day leave is granted an additional 30 days, a total of 60 days can be granted with approval of the department manager and the human resources department as well (Edwards pg. 30, Exhibit 1).

On June 17, 2015, Churchwell submitted to Sue Hyde a 30-day leave without pay request for the period of time from June 17, 2015 through July 16, 2015 (Churchwell pg. 71, Hyde pg. 39, Exhibit 1). Hyde did receive Churchwell's request for a 30-day unpaid leave of absence and Hyde responded to Churchwell's request for an unpaid leave of absence by denying it via an email dated June 17, 2015 which she copied to Rick Blat, and Rebecca Edwards (Hyde pg. 40-42, Churchwell pg. 72-73, Edwards pg. 35, Exhibit 1, Exhibit 6). Edwards is employed by the City of Concord as the Director of Human Resources, a position she held since December 2014

2

(Edwards pg. 13). Hyde's email indicated that she would code Churchwell's absences as unexcused until they heard back from "the ADA outcome from Human Resources" (Hyde pg. 46-47, Exhibit 1). Hyde testified that she denied the request for a 30-day unpaid leave of absence because the department only had 3.5 full time engineers (referred to as FTE) to handle projects and if Churchwell was granted a 30-day leave of absence, that would only leave 2.5 full time engineers for the projects (Hyde pg. 43-44).

The process to request reasonable accommodations through the City of Concord consists of either the employee or a supervisor contacting the human resources department to discuss the potential need (Edwards pg. 19-23). Edwards would become involved in the situation if the reasonable accommodation request was escalated to her, meaning that it was a complex issue that she needed to address (Edwards pg. 21-22). To continue with a reasonable accommodation request, the HR department would provide the employee with a reasonable accommodation request form (Edwards pg. 24). This form was not posted, nor directly available to the employee, but only available from the human resource department (Edwards pg. 24). Edwards had been trained in the ADA and she was aware that the City had a duty to engage in the interactive process (Edwards pg. 39-40). Edwards admitted she received a copy of Sue Hyde's response denying the unpaid leave that Hyde sent on June 17, 2015 which included Churchwell's request for a 30-day unpaid leave of absence (Edwards pg. 27-28, Exhibit 1).

Churchwell was provided with a Notice of Pre-Disciplinary Conference on or about July 1, 2015 which advised her that it was the intention of the City to terminate her employment due to unexcused absences (Churchwell pg. 89, Hyde pg. 47-48, Exhibit 2). Edwards was aware that the Notice of Pre-Disciplinary Conference was being sent to Churchwell on or before July 1, 2015 (Edwards pg. 30-31, Exhibit 2). During the Conference, Churchwell explained again to

Defendant about her medical issues and tried to discuss options for reasonable accommodations including the 30-day leave of absence (Churchwell pg. 92-98). Churchwell was officially terminated on or about July 5, 2015 for alleged excessive absences (Churchwell pg. 15-16, Edwards pg. 33-34, Exhibit 4).

Hyde admitted in her testimony that after Churchwell was fired, the department remained with only 2.5 full time engineers until sometime in 2017, and that the City did not even post the position seeking to replace Churchwell until August 2015 when an advertisement was placed (Hyde pg. 43-46). From the time of Churchwell's termination until the time the new engineer was hired, Churchwell's work was split between Rick Blat and Clint Shoaf, Project Engineer (Hyde pg. 46). Churchwell was terminated solely because she was absent from work and she would not have been terminated had she been granted the 30-day unpaid leave of absence (Hyde pg. 48-49, Exhibit 2). It is undisputed that Churchwell was terminated because she had not returned back to work during the period of time which she had requested an unpaid leave of absence (Hyde pg. 50).

## STANDARD OF REVIEW

Summary judgment shall be granted in favor of the moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Fed. R. Civ. Pr. 56(c). See Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). A properly supported motion for summary judgment will not be defeated by the existence of any factual dispute; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. A genuine issue exists "if the evidence is such that a reasonable jury

4

could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). 353 (1985). "A district court should grant summary judgment unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." Id. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677 (2009) (internal citations omitted). Defendant simply cannot meet this burden as there is no genuine factual dispute. Accordingly, Churchwell should be granted summary judgment as a matter of law.

## QUESTIONS PRESENTED

1- Did Defendant violate the ADA by refusing Plaintiff's request for a reasonable accommodation?

2- Would the grant of unpaid leave pursuant to policy create an undue burden to the City?

## LEGAL ANALYSIS

**1. The Americans with Disabilities Act**

The Americans with Disabilities Act (ADA) prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability...." 42 U.S.C. § 12112(a). Included in this prohibition against unlawful discrimination is the requirement to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee...." Id. § 12112(b)(5)(A). The ADA, pursuant to its terms and EEOC regulations, provides that "reasonable

accommodations" may comprise "job restructuring, part-time or modified work schedules," 42 U.S.C. § 12111(9)(B), and "permitting the use of accrued paid leave or <u>providing additional unpaid leave for necessary treatment</u>...." 29 C.F.R. § 1630.2(*o*) (Appendix) (2011) (emphasis added). Churchwell requested unpaid leave as a reasonable accommodation.

In September 2008, Congress broadened the definition of "disability" by enacting the ADA Amendments Act of 2008, Pub.L. No. 110–325, 122 Stat. 3553 ("ADAAA" or "amended Act"). *Id*. The ADAAA provides that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms." 42 U.S.C. § 12102(4)(A). Further, Congress instructed that the term "substantially limits" be interpreted consistently with the liberalized purposes of the ADAAA. Id. § 12102(4)(B). The 2008 amendments included amendments to the terms "major life activities" and "substantial limitation" for the purposes of defining "disability" under section 12102(1). "Disability" is to be "construed in favor of broad coverage of individuals under this chapter [Chapter 126, 'Equal Opportunity for Individuals with Disabilities'] to the maximum extent permitted by [its] terms." <u>Bray v. Town of Wake Forest</u>, WL 1534515 (April 6, 2015, W.D.N.C.) (citing 42 U.S.C. § 12102(4)(A)). The ADAAA provides that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). In adopting the ADAAA, Congress sought to override <u>Toyota Motor Manufacturing, Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 199, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), in which the Supreme Court had adopted a strict construction of the term "disability" and suggested that a temporary impairment could not

6

qualify as a disability under the Act. Congress believed that Toyota set an "inappropriately high level of limitation necessary to obtain coverage under the ADA." Pub.L. No. 110–325, § 2(b)(5).

In abrogating Toyota, the ADAAA provides that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms." Summers v. Altarum Institute, Corp., 740 F.3d 325 (4th Cir. 2014.) (citing 42 U.S.C. § 12102(4)(A)). Further, Congress instructed that the term "substantially limits" be interpreted consistently with the liberalized purposes of the ADAAA. *Id*. Congress directed the Equal Employment Opportunity Commission ("EEOC") to amend its regulations defining the term "substantially limits" to "render them consistent with the broadened scope of the statute." Id., See Pub.L. No. 110–325, § 2(b)(6).

The revised EEOC regulations clarifying 'substantially limits' shall be construed broadly in favor of expansive coverage" and that the term is "not meant to be a demanding standard." Id. See 29 C.F.R. § 1630.2(j)(1)(i) (2013). The amended EEOC regulations also provide that "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting" for purposes of proving an actual disability. *Id.,* See § 1630.2(j)(1)(ix). In the appendix to the EEOC regulations, the "duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity." Id. § 1630.2(j)(1)(ix) (app.). Although "[i]mpairments that last only for a short period of time are typically not covered," they may be covered "if sufficiently severe." *Id*. The EEOC appendix further states: "[I]f an individual has a back impairment that results in a 20–pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability." *Id*.

**2. Churchwell was entitled to a reasonable accommodation.**

7

To establish a prima facie case of failure to accommodate within the meaning of the ADA, Churchwell must present evidence establishing:

(1) that she was an individual who had a disability within the meaning of the statute;

(2) that the City had notice of her disability;

(3) that with reasonable accommodation she could perform the essential functions of the position ...; and

(4) that the City refused to make or provide such accommodations. See, e.g., Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). If the employee makes such a showing, the employer can still prevail if it can show that the accommodation will pose an undue hardship. Reyazuddin v. Montgomery Cty., 789 F.3d 407, 414 (4th Cir. 2015). Churchwell can establish all four (4) elements and the City cannot establish that the accommodation would pose an undue hardship.

First, Churchwell has a disability within the meaning of the Americans with Disabilities Act. Churchwell suffers from Chronic Autoimmune Urticaria, Irritable Bowel Syndrome, and chronic migraines, conditions that substantially affect her daily living activities including seeing, walking, driving, the ability to get out of bed, and her ability to leave the house (Churchwell Declaration). Churchwell's medical conditions also cause her to have debilitating pain, dizziness, nausea, vomiting, stress, anxiety, sensitivity to temperature fluctuations, severe stomach cramping, sensitivity to light and sound, and the inability to think clearly. (Churchwell Declaration, Para. 1). As such, Churchwell as established the first element of her prima facie case. As previously discussed, the ADAAA broadened the definition of disability and the ADA should be construed in favor of "broad coverage" to "the maximum extent permitted."

8

### Churchwell has established the first element of her prima facie case.

Second, it is undisputed that the City had notice of Churchwell's disability. As early as 2007 or 2008, Churchwell has discussed her disability with her second level supervisor, Sue Hyde (Hyde pg. 31). Additionally, the City and Churchwell were already involved in a reasonable accommodation process prior to her request for the thirty (30) day unpaid leave. The reasonable accommodation process began prior to June 5, 2015 and dealt with modifications to Churchwell's job (Churchwell pg. 58-61, Churchwell Exhibit 13). Further, on June 18, 2015, in response to the City's denial of her request for a thirty (30) day unpaid leave of absence, Churchwell specifically noted that "[m]y request for 30 days leave IS directly due to a current medical hardship." (Exhibit 6). This email was in response to Hyde's previous email in which she appeared to acknowledge that Churchwell's request for thirty (30) days leave was to be processed as an ADA reasonable accommodation request. Hyde specifically wrote "[w]e will continue to code your absences unauthorized leave without pay and wait to hear the ADA outcome from Human Resources. HR is also handling any short disability request." (Exhibit 1 and Exhibit 6)

Certainly, the City might argue that it did not know the request for a thirty (30) day unpaid leave was a request for an accommodation because Churchwell did not fill out a reasonable accommodation form or say that she wanted the leave as a reasonable accommodation. However, it has been long established that an employee need not use any "magic words" to invoke her right to a reasonable accommodation. See, e.g., Schmidt v. Safeway Inc., 864 F. Supp. 991, 997, (D. Or. 1994) ("statute does not require the plaintiff to speak any magic words. . . The employee need not mention the ADA or even the term 'accommodation.'"). This is especially true when Churchwell clarifies on June 18 that she needed the leave for a

9

"medical hardship." (Exhibit 6). That email was sent both to Hyde, as Department Manager, and Rebecca Edwards, Director of HR, both of whom confirmed receipt of same.

<u>Churchwell has established the second element of her prima facie case.</u>

Third, the reasonable accommodation plaintiff sought would have allowed her to perform the essential functions of the job. According to Churchwell's undisputed testimony, she was able to return back to work with the job modifications which had been granted, within the period allowed by the City's unpaid leave policy. This situation is exactly covered by the EEOC regulation which references providing additional unpaid leave as a reasonable accommodation. <u>29 C.F.R. § 1630.2(*o*)</u> (Appendix) (2011).

<u>Churchwell has established the third element of her prima facie case.</u>

Fourth, it is undisputed that the City refused to provide Churchwell with the accommodation (Hyde pg 42-44, Exhibit 1) which <u>establishes the fourth element of Churchwell's prima facie case</u>.

Based on the foregoing, Churchwell as established a prima facie case that the City violated the law by refusing to provide her the unpaid leave as a reasonable accommodation.

**3. The City of Concord cannot show granting Churchwell's unpaid leave was an undue hardship.**

Although Churchwell has established a prima facie case of failure to accommodate, the City could prevail by showing that the requested accommodation (leave under the City policies) would be an undue burden. The City cannot do so. It is undisputed that the City denied the

10

requested leave based on the rationale that there were too few employees to cover Churchwell's absence. The facts do not support a claim of undue burden.

The ADA provides as following:

> Undue hardship
>
> (A) In general
> The term "undue hardship" means an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B).
>
> (B) Factors to be considered
> In determining whether an accommodation would impose an undue hardship on a covered entity, factors to be considered include—
>
> (i) the nature and cost of the accommodation needed under this chapter;
> (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
> (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
> (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity. 42 U.S.C. § 12111(10).

An undue hardship is "an action requiring significant difficulty or expense" based on considerations of the nature and cost of the accommodation, the overall financial resources of the employer, and the impact the accommodation might have on the employer, among other factors. Smith v. Loudoun County Public Schools, WL 659786 (E.D. Va. February 18, 2016). The ADA does not require that "the employer go out of his way to provide an accommodation for a

11

disabled employee, but only requires that accommodations are 'reasonable." Schneider v. Giant of Maryland, LLC, 389 Fed. Appx. 263 (4th Cir. 2010), quoting Vande Zande v. State of Wis. Dep't of Admin., 44 F.3d 538, 542 (7th Cir. 1995) ("To 'accommodate' a disability is to make some change that will enable the disabled person to work ... and at the very least, the cost could not be disproportionate to the benefit."). Under the ADA, a temporary leave of absence may be a reasonable accommodation. Kitchen v. Summers Continuous Care Center, LLC, 552 F. Supp.2d 589 (S.D.W.V. 2008); see also McNamara v. Tourneau, Inc., 496 F.Supp.2d 366, 376 (S.D.N.Y.2007) ("In some circumstances, a temporary inability to work may not be a bar to a disability claim; for example, an unpaid leave of absence can be a reasonable accommodation under the ADA ....") (citing Graves v. Finch Pruyn & Co., 457 F.3d 181, 185-86, (2d Cir.2006); Humphrey v. Mem'l Hosps. Ass'n,, 239 F.3d 1128, 1136 (9th Cir. 2001).

In response to her request for unpaid leave, Hyde told Churchwell that it was being denied because the department only had 3.5 FTE and if she was granted a leave of absence it would only leave 2.5 FTE (Hyde pg. 43-44, Exhibit 1). Hyde explained in her deposition that the term FTE meant Full Time Engineers and that, at the time of the request for unpaid leave, the department employed 3.5 FTEs. Those FTEs were: Churchwell, Clint Shoaf, Rick Blat, and Sue Hyde. Hyde testified that she counted herself as .5 Full Time Engineer. Hyde further testified that she could not allow Churchwell the unpaid leave as it would only leave 2.5 FTE with which to complete the department's work (Hyde 43-45, Exhibit 1). However, Hyde admitted that the City did not even seek to replace Churchwell until sometime in August 2015 when it posted her former position (Hyde pg. 45). Moreover, the City did not actually find a qualified candidate to replace Churchwell until sometime in late 2016 and that person did not begin until 2017 (Hyde pg. 45). This means that the department operated with 2.5 FTE for at least a year or more until

such time that Churchwell was replaced. This clearly belies the City's argument that it could not allow Churchwell the benefit of its unpaid leave policies due to workload. The work was handled not only for the period of time in which Churchwell requested, but also within the extended period of time which could have been allowed by the policy, to wit: 60 days with department and HR approval. As such, the City cannot establish it could not have allowed her off due to workload. Not only did the City cover her workload for the duration of any possible unpaid leave, it continued to cover her workload for well over a year.

Churchwell believes that the City may argue it did not know that her request for a unpaid leave was a request for a reasonable accommodation or that Churchwell did not include the request as part of her previously submitted reasonable accommodation request. While it is true that Churchwell did not modify her previous reasonable accommodation request or start a new one, the City never engaged in an interactive process related to the request for the unpaid thirty (30) day leave. (Churchwell Declaration, Para. 9) The Fourth Circuit has recognized that the ADA requires employer to engage in an interactive process to identify a reasonable accommodation. Jacobs v. N.C. Admin. Off. of the Courts, 780 F.3d 562 (4th Cir. 2015) "This duty is triggered when an employee communicates her disability and desire for an accommodation—even if the employee fails to identify a specific, reasonable accommodation. Id. At 581 The Court in the Jacobs case noted that failure or refusal to engage in the interactive process is "evidence of bad faith." Id. This is true here where Churchwell followed the policy related to unpaid leave, her Department Manager denied the leave with an acknowledgment that HR was handling the matter and Churhwell clarified in writing that she sought the accommodation due to a "medical hardship."

13

Therefore, based on the above, the City cannot prove that allowing Churchwell the unpaid time off would have been an undue burden.

**CONCLUSION**

For the reasons outlined above, Churchwell respectfully submits that the Court should GRANT Plaintiff's Motion for Partial Summary Judgment, as there exist no genuine issues of material fact in this matter and she is entitled to Judgment as a matter of law on her claim of failure to provide a reasonable accommodation.

Respectfully submitted this, the 30th day of March, 2018.

/s/ KIRK J. ANGEL
Kirk J. Angel NCSB#: 33559
THE ANGEL LAW FIRM, PLLC
109 Church Street N
Concord NC 28025
PO Box 1296 (28026)
Telephone: 704.706.9292
Facsimile: 704.973.7859
E-mail: kirk@mailalf.com
Attorney for the Plaintiff

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JANA CHURCHWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Civil Action No.** |
| v. ) | |
| ) | **1:17-CV-00299** |
| CITY OF CONCORD, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2018, I electronically filed the foregoing "Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment" with the Clerk of the Court using the CM/ECF system which will send notice to the following:

Patrick H. Flanagan
Cranfill Sumner & Hartzog LLP
2907 Providence Rd.
Suite 200
Charlotte NC 28211
Telephone: 704.940.3419
E-mail: phf@cshlaw.com

Maranda J. Freeman
City of Concord
35 Cabarrus Ave. W
Concord NC 28026
Telephone: 704.920.5119
E-mail: freemanmj@concordnc.gov

15

Case 1:17-cv-00299-CCE-JLW   Document 15   Filed 03/30/18   Page 15 of 16

/s/ KIRK J. ANGEL
Kirk J. Angel NCSB#: 33559
THE ANGEL LAW FIRM, PLLC
109 Church Street N
Concord NC 28025
PO Box 1296 (28026)
Telephone: 704.706.9292
Facsimile: 704.973.7859
E-mail: kirk@mailalf.com
Attorney for the Plaintiff