IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| JANA CHURCHWELL, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:17-CV-299 |
| CITY OF CONCORD, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The plaintiff, Jana Churchwell, has sued the City of Concord alleging that it did not accommodate her disability and discharged her because of her disability, both in violation of the Americans with Disabilities Act. The City moves for summary judgment and Ms. Churchwell moves for partial summary judgment. The motions will be denied.

**FACTS[1]**

Ms. Churchwell worked as a project engineer for the City of Concord from 2001 until her termination in July 2015. Doc. 14-4 at ¶ 2. Her direct supervisor was Rick Blat, the Deputy City Engineer, and her second-line supervisor was Sue Hyde, the City's Engineering Director. Doc. 14-1 at 7-8; Doc. 14-2 at 8; Doc. 20-1 at ¶ 2.

Ms. Churchwell was diagnosed with chronic autoimmune urticaria in 2001. Doc. 14-1 at 8-9. By 2007, she was unable to work for short periods of time because of her

---

[1] The facts as set forth are either undisputed or viewed in the light most favorable to the non-moving party. *See, e.g., United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

symptoms. Docs. 14-1 at 8-9; 14-4 at ¶¶ 3-4. In 2013, she was also diagnosed with irritable bowel syndrome and chronic migraine headaches. Doc. 14-1 at 10-11; Doc. 17-2 at 4-5. She sought and was granted FMLA leave, as well as certain accommodations, at various times between 2007 and 2015. Doc. 17-2 at 3-5; Doc. 14-1 at 12.

In May 2015, Ms. Churchwell was intermittently out of work due to migraines and IBS symptoms. Doc. 17-2 at 8; Doc. 14-4 at ¶ 4. From June through her termination, she was out of work nearly continuously. Doc. 17-2 at 8, 10-11. She used a combination of sick days, vacation days, and FMLA leave to cover her work absences. Doc. 17-14.

On June 5, a Benefits Specialist with the HR Department sent Ms. Churchwell a letter advising her that she would soon exhaust her FMLA leave and enclosing a copy of the City's ADA reasonable accommodation request form. Doc. 17-12. The Benefits Specialist also told Ms. Churchwell the City would "assume [she] ha[d] resigned [her] position" if she did not return the form by June 20. Doc. 17-12.

Ms. Churchwell exhausted her FMLA leave on Friday, June 12. Doc. 17-13. She "tried [going] back" to work on Monday, June 15, but she was able to work for only half a day before returning home. Doc. 17-2 at 11. She was absent from work on unauthorized leave for the remainder of June through her termination. Doc. 17-2 at 11.

On June 16, Ms. Churchwell submitted a reasonable accommodation request to the City's HR Department. Doc. 14-15 at 1-3. As accommodations, she requested:

1. If in the office and come down with symptoms, may need to leave;
2. If at home and have symptoms or medication side effects, may need to stay home and away from office;
3. I may need to leave office for doctors appointments or treatment therapies, or for medication at pharmacy;

2

> 4. I may need to avoid being in extreme temperatures for extended lengths of time.

Doc. 14-15 at 3.[2] Her primary care physician submitted paperwork indicating that no accommodation would enable Ms. Churchwell to perform her job's essential duties while she was suffering from a migraine. Doc. 17-9 at ¶ 4. He also asserted that she might need medical leave of "1 day per every 2 weeks or less." Doc. 17-9 at ¶ 5.

The next day, Ms. Churchwell also sent an email to Ms. Hyde asking for thirty days of unpaid leave, from June 17 to July 16.[3] Doc. 14-7 at 1-2. Ms. Hyde denied Ms. Churchwell's request via a June 17 email, on which she copied the City's HR Director, Rebecca Edwards. Doc. 14-7 at 1. Ms. Hyde said she denied the request because the Engineering Department had 3.5 full time engineers, 48 active projects, and "[l]osing one full-time engineer staff person would put [the Engineering Department's] projects even further behind schedule." Doc. 20-1 at ¶¶ 6-7. Ms. Edwards knew Ms. Churchwell had requested unpaid leave and that the request was "directly due to current medical hardship." Doc. 14-10 at 1.

In late June, the City granted Ms. Churchwell's June 16 accommodations request and instructed her to return to work on June 26. Doc. 14-12. Ms. Churchwell told Ms. Hyde and Ms. Edwards this was "insufficient" and that she needed additional time off.

---

[2] For clarity, the Court will refer to her request as the "June 16 accommodations."

[3] The City's policy permits an employee to request thirty days of unpaid leave through their Department Head. Doc. 17-5 at 2. The Department Head has the discretion to approve or deny the request. *Id.* If the initial thirty-day leave is granted, an additional thirty days may be granted with the approval of both the Department Head and Human Resources. *Id.*

Doc. 14-1 at 24. She did not return to work on June 26 or at any point in June because, according to Ms. Churchwell, her condition "worsened," rendering her "completely unable to work for a period of a few weeks." Doc. 14-4 at ¶ 5; Doc. 20-1 at ¶¶ 4, 9.

On July 1, Ms. Hyde notified Ms. Churchwell she had violated the City's "absence without leave policy" and that she was considering the "full range" of disciplinary action. Doc. 14-8. At her pre-disciplinary conference, Ms. Churchwell explained she had been averaging 15 migraines per month, was suffering from medication cross-reactivity issues, and needed additional time off. Doc. 14-1 at 25-30. After receiving this information, Ms. Hyde concluded that "the facts remain the same" and terminated Ms. Churchwell on July 6 for violating City policy. Doc. 17-7. Ms. Churchwell would not have been terminated had the City granted her leave request. Doc. 14-2 at 21-22.

The Engineering Department operated with 2.5 full time engineers from July 2015 until 2017. *Id.* at 16-18. Ms. Churchwell's workload was split between Mr. Blat and the other Project Engineer. *Id.* at 19. No job advertisement was posted for her position until August 2015 and her replacement was not hired until early-2017. *Id.* at 17-18. With treatment, Ms. Churchwell's migraines improved such that she could have returned to work—with previously granted accommodations—following the unpaid leave that she requested. Doc. 14-4 at ¶¶ 7-8.

## STANDARD OF REVIEW

Summary judgment should be granted if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating the

4

absence of any material issue of fact; once the moving party meets its initial burden, the non-moving party must come forward with evidentiary material demonstrating the existence of a genuine issue of material fact requiring a trial. *Ruffin v. Shaw Indus., Inc.*, 149 F.3d 294, 300-01 (4th Cir. 1998) (per curiam) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

**ANALYSIS**

I. Failure to Accommodate

Ms. Churchwell contends that the City discriminated against her by denying her request for thirty days of unpaid leave as a reasonable accommodation.[4] To establish a prima facie case of failure to accommodate under the ADA, Ms. Churchwell must show that: (1) she was an individual who had a disability under the meaning of the statute; (2) the City had notice of her disability; (3) with reasonable accommodation she could perform the essential functions of the position; and (4) the City refused to make such accommodations. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).[5]

---

[4] The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability…" 42 U.S.C.A. § 12112(a) (West through P.L. 115-173). Such unlawful discrimination includes the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." *Id.* § 12112(b)(5)(A). The phrase "reasonable accommodation" means "[m]odifications or adjustments . . . that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

[5] To defeat a motion for summary judgment, the plaintiff "need only show that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401, 410 (2002).

Ms. Churchwell has offered evidence sufficient to meet all four elements of a prima facie case. It is not disputed that she had a disability under the ADA and that the City knew of her disability. Doc. 14-4 at ¶¶ 3-6. As for the third element, Ms. Churchwell has produced evidence that she could have performed the essential functions of her position if the City had granted her unpaid leave request.[6] She testified that her migraines improved with treatment and she could have returned to work with the job modifications that the City granted within the period of time allowed in its leave policy. Doc. 14-4 at ¶¶ 7-8; *see Wilson*, 717 F.3d at 345-46 (employee requesting leave as reasonable accommodation must show that "at the point at which he would have returned from leave, he could have performed the essential functions of his job"). Additionally, she has submitted evidence that the City refused to grant her request for unpaid leave, which establishes the fourth element. *See* Doc. 14-7. Thus, she has put forth a prima facie case.

The City makes several arguments that Ms. Churchwell has not put forward a prima facie case. None have merit. First, the City contends that Ms. Churchwell's request for unpaid leave "was not made as a request for an accommodation," essentially because she did not use a particular City form or the phrase "reasonable accommodation." Doc. 20 at 9-10. The City cites no authority supporting this formalistic approach, and, to the contrary, the case law is clear that a plaintiff need not

---

[6] Federal regulations and case law are clear that unpaid leave can be a form of reasonable accommodation. 29 C.F.R. Pt. 1630, App.; *Wilson*, 717 F.3d at 344-45.

use "magic words" to request a reasonable accommodation.[7] *Ainsworth v. Loudon Cty. Sch. Bd.*, 851 F. Supp. 2d 963, 981 (E.D. Va. 2012). Ms. Churchwell's request, along with her later clarification that she needed the leave because of "medical hardship," was sufficient to communicate her desire for an accommodation. *See* Doc. 14-10 at 1-2.

The City also contends that Ms. Churchwell's claim is without merit "because the evidence shows that [she] was granted a reasonable accommodation based upon her doctor's recommendation." Doc. 20 at 8. It is true that an employer has "the ultimate discretion to choose between effective accommodations." 29 C.F.R. Pt. 1630, App. However, whether an accommodation is reasonable or effective is a question of fact, *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 416 (4th Cir. 2015), and Ms. Churchwell has produced evidence from which a rational jury could conclude the City's accommodation was ineffective. *See, e.g.,* Doc. 14-4 at ¶¶ 5-7 (testimony that Ms. Churchwell was too ill to work during the period that she requested unpaid leave). At a minimum, the City had a duty to engage with Ms. Churchwell to determine a reasonable accommodation. *See Wilson*, 717 F.3d at 346–47 (employee's accommodation request triggers employer's obligation to participate in the interactive process of determining a reasonable accommodation). As to the unpaid leave request, the City produces no evidence that it engaged in an interactive process. Rather, Ms. Hyde denied the request

---

[7] An employee requesting an accommodation "may use 'plain English' and need not mention the ADA or use the phrase 'reasonable accommodation.'" EEOC, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, Requesting Reasonable Accommodation Section (Oct. 17, 2002) (hereinafter EEOC Enforcement Guidance), *available at* https://www.eeoc.gov/policy/docs/accommodation.html#general (last visited June 6, 2018).

7

out of hand and testified that she considered only workload-related reasons, not whether unpaid leave was a reasonable accommodation. *See* Doc. 20-1 at ¶¶ 6-8; Doc. 14-7.

The City further contends that Ms. Churchwell has not produced evidence that she required thirty days of unpaid leave as an accommodation. Logically, an employer should not be required to grant an accommodation without evidence that one is needed. *See, e.g., E.E.O.C. v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1094 (6th Cir. 1998) (noting that an "employer need not take the employee's word" that she requires an accommodation, but may instead "confirm or disprove the employee's statement"). But the EEOC suggests that the onus is on the employer to request documentation:

> May an employer ask an individual for documentation when the individual requests reasonable accommodation?
>
> Yes. When the disability and/or the need for accommodation is not obvious, the employer may ask the individual for reasonable documentation about his/her disability and functional limitations. The employer is entitled to know that the individual has a covered disability for which s/he needs a reasonable accommodation.

EEOC Enforcement Guidance, Requesting Reasonable Accommodation Section. Here, there is no evidence that the City requested medical documentation pertaining to Ms. Churchwell's request for unpaid leave. To the contrary, the record shows that the City did not treat Ms. Churchwell's request as one for a reasonable accommodation at all. In fact, Ms. Hyde denied the request "solely on the work needs of the department." Doc. 20 at 11 (citing Doc. 20-1 at ¶ 8).

In general, once the plaintiff shows the accommodation she needs is reasonable, the burden shifts to the defendant to show undue hardship. *Barnett*, 535 U.S. at 402; 42

8

U.S.C.A. § 12112(b)(5)(A) (West P.L. 115-173).[8]  Here, the City contends that granting Ms. Churchwell's claim would have imposed an undue hardship on the Engineering Department because the loss of a single engineer—in a department with only 3.5 full time engineers—would have caused other staff to take on more work and resulted in slower project delivery time.  Doc. 20-1 at ¶¶ 6-7.

Certainly the City has put forth evidence to show undue hardship.[9]  However, Ms. Churchwell has put forward evidence from which a reasonable jury could conclude the City's explanation was pretextual.  The City did not post a job advertisement for her position until August 2015—past the time Ms. Churchwell would have returned to work with her requested accommodation—and her replacement did not begin work until early 2017.  Doc. 14-2 at 16-19.  This left the City with only 2.5 full time engineers—the precise number of staff that Ms. Hyde testified "would not have been able to meet the mission and objective of the Department"—for nearly 1.5 years.  Doc. 20-1 at ¶ 8; Doc. 14-2 at 16-19.  The Court will deny the City's summary judgment motion as to this claim.

II. Disability Discrimination

Ms. Churchwell also contends that the City discriminated against her on the basis of her disability, in violation of the ADA, by terminating her employment.  She relies on the *McDonnell Douglas* burden-shifting framework.  *Jacobs v. N.C. Admin. Office of the*

---

[8] The phrase "undue hardship" means, generally, an action requiring significant difficulty or expense.  *See* 42 U.S.C.A. § 12111(10)(A) (West through P.L. 115-173).  It includes "any accommodation that would be unduly costly, extensive, substantial, or disruptive, or that would fundamentally alter" the covered entity's nature or operations.  29 C.F.R.  Pt. 1630, App.

[9] To the extent Ms. Churchwell moves for partial summary judgment on this issue, her motion will be denied.

9

*Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (applying burden-shifting framework to ADA case). To establish a claim for disability discrimination under the ADA, a plaintiff must prove (1) that she has a disability, (2) that she is a qualified individual, and (3) that her employer discharged her (or took other adverse employment action) because of her disability. *Id.*; *accord Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012). As previously noted, it is undisputed that she has established that she has a disability.

Ms. Churchwell also shows that she is a qualified individual. Under the ADA, a "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8) (West through P.L. 115-173). It is well-established that unpaid leave can be a form of reasonable accommodation. *E.g., Wilson*, 717 F.3d at 344-45. And, as discussed above, Ms. Churchwell has produced evidence that she could have performed the essential functions of her job had she been granted unpaid leave as a reasonable accommodation. She testified that her migraines improved and that she could have returned to work within the period of time allowed in the City's leave policy. Doc. 14-4 at ¶ 7. She also testified that her work performance was generally satisfactory, *see* Doc. 14-1 at 27-28, and shows she worked as a Project Engineer for the City for 14 years. Doc. 14-4 at ¶ 2. From this evidence, a reasonable jury could conclude that Ms. Churchwell was qualified.

Ms. Churchwell also produces evidence from which a reasonable jury could conclude she was terminated because of her disability. It is undisputed that both Ms.

Hyde and Ms. Edwards were aware of her disability. *See* Doc. 14-10; Doc. 14-15. It is also undisputed that the City's refusal to approve leave without pay caused her absences to be "coded" as unexcused, leading to her termination. Doc. 14-10 at 2. Additionally, the short time frame between her request for unpaid leave and her termination provides circumstantial evidence of causation. *See Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001) (temporal proximity alone can create a genuine dispute as to causation). Finally, she has proffered evidence that the City's stated reasons for her termination were not its true reasons. As discussed *supra*, the purported reason for her termination was that the Engineering Department "would not have been able to meet [its] mission . . . with one full-time staff person being unavailable for a month's time." Doc. 20-1 at ¶ 8. However, the City did not post the job for over a month and did not hire anyone for over a year. Doc. 14-2 at 17-18. A reasonable jury could infer causation from the evidence contradicting Ms. Hyde's explanation. *Cf. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (trier of fact may infer "the ultimate fact of discrimination from the falsity of the employer's explanation").

The City contends that Ms. Churchwell was not a qualified individual because no reasonable jury would find, at the time of her discharge, that she was meeting its legitimate expectation that an employee come to work. Regular attendance is a necessary element of most jobs. *E.g., Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994). It is undisputed that Ms. Churchwell's unpaid leave request was denied on June 17, Doc. 17-5; the City instructed her to return to work on June 26, Doc. 17-8; and she did not come to work. Doc. 20-1 at ¶ 9. But it is also clear that unpaid leave can

11

be a form of reasonable accommodation.  29 C.F.R. Pt. 1630, App.  And Ms. Churchwell says she failed to meet the City's expectations only because its denial of her leave request caused her absences to be unexcused, leading to her termination.  Together with her showing that a grant of unpaid leave would have permitted her to perform the essential functions of her job, *supra* pp. 4, 10, a reasonable jury could find that she was qualified.

Because a reasonable jury could conclude that Ms. Churchwell has made out a prima facie case, the burden shifts to the City to rebut her prima facie case with a legitimate, non-discriminatory reason for her termination.  The City proffers evidence that Ms. Churchwell was out of work on unexcused leave after June 16, in violation of City policy, and that this resulted in her termination.  Doc. 17-2 at 11; Doc. 17-7.

Once the City offers such evidence, Ms. Churchwell must show by a preponderance of the evidence that the City's reason is pretextual.  *See Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007).  To prove pretext, Ms. Churchwell must "show[] that the [City's] proffered explanation is unworthy of credence."  *Reeves,* 530 U.S. at 143.  The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Id.*

As previously discussed, Ms. Churchwell has put forward sufficient evidence of pretext to defeat summary judgment.  *See Foster v. Univ. of Md.–E Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (plaintiff may rebut the employer's evidence "by demonstrating that the employer's purported nonretaliatory reasons 'were not its true reasons, but were a pretext for discrimination'") (quoting *Reeves*, 530 U.S. at 143).  Summary judgment will be denied.

## CONCLUSION

The evidence in this case conflicts as to whether the City failed to make reasonable accommodations for Ms. Churchwell's disability and terminated her in violation of the Americans with Disabilities Act. Therefore a trial is required and the summary judgment motions will be denied.

It is **ORDERED** that the plaintiff's motion for partial summary judgment, Doc. 14, is **DENIED**. It is further **ORDERED** that the defendant's motion for summary judgment, Doc. 16, is **DENIED**.

This the 11th day of June, 2018.

UNITED STATES DISTRICT JUDGE